UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
Piers Gardner,

                 Plaintiff,

        v.                          05 Civ. 5193 (DAB)
                                         <u>ORDER</u>
Suri Lefkowitz,

                 Defendant.
------------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Before the Court is Defendant's September 30, 2016 Motion to Vacate Default Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure. (Dkt. 57.) Defendant also filed for Rule 11 Sanctions against Plaintiff on January 12, 2017. (Dkt. 69.) For the reasons stated herein, Defendant's Motions for Reconsideration and Sanctions are DENIED.

    I.   <u>BACKGROUND</u>

    A. Factual Background

    This case arises out of a dispute over unpaid legal bills between Piers Gardner, an English Barrister, and Surie Lefkowitz. A detailed factual account is contained in the February 2011 Magistrate Report and Recommendation. (Report and Recommendation of Magistrate Judge James C. Francis IV ("R. & R."), dkt. 17.)

To summarize, Ms. Lefkowitz's brother, Sholam Weiss, was convicted of a crime in Florida in 1999 but absconded to Austria. After the United States sought extradition, Mr. Weiss moved for an Order from the European Court of Human Rights forbidding his removal. (Decl. of Piers Gardner, Opp. to Mot. to Vacate Default Judgment ("Gardner Decl."), dkt. 9, ¶ 3.) When the European Court of Human Rights denied that request, Ms. Lefkowitz telephoned Mr. Gardner and instructed him to take "whatever further steps were available to protect" her brother. (Gardner Decl. ¶ 4.) Mr. Gardner advised that the only course of action was to apply to the United Nations Human Rights Committee for interim measures to prevent extradition, but that the chances of success were slim. (Id. ¶ 5.) Ms. Lefkowitz told Mr. Gardner to make such an application and expressly agreed to be responsible for all fees. (Id. ¶ 6.) Ms. Lefkowitz reaffirmed her agreement to retain Mr. Gardner when she met with him in Vienna on June 5, 2002. (Id. ¶ 8.) Mr. Gardner's initial application was unsuccessful, and Mr. Weiss was extradited to the United States on June 9, 2002. Nevertheless, Mr. Gardner pursued appeals within the United Nations Human Rights Committee through at least December 23, 2002. (Ex. D to Second Supp. Obj. to R. & R. of Magistrate Judge on Def.'s Mot. to Vacate, dkt. 29-4 ("December 2002 Demand Letter").)

2

Ms. Lefkowitz wired Mr. Gardner £5,259.57 on July 22, 2002. (Gardner Decl. ¶ 10.) Mr. Gardner continued to send Ms. Lefkowitz a series of "fee notes," or bills, for his services rendered. Mr. Gardner sent the fee notes by mail (and fax) to the address Ms. Lefkowitz provided him, 1542 54th Street, Brooklyn, New York, 11219. (Id. ¶ 2; ¶ 11-12.) When Ms. Lefkowitz failed to pay the remaining balance of £73,618.57 (or $115,734.88 at the applicable exchange rate), Mr. Gardner sent Ms. Lefkowitz a demand letter. (December 2002 Demand Letter.) Mr. Gardner then commenced the instant litigation on June 1, 2005 seeking recovery of the unpaid legal fees. (Compl.)

Before attempting service, Mr. Gardner's process serving company verified with the United States Postal Service of Ms. Lefkowitz's address at 1542 54th Street. (Decl. of Joel Golub ("Golub Decl."), dkt. 7, ¶ 2.) A process server then attempted to serve Ms. Lefkowitz personally three times at that address on June 17, 2005, July 5, 2005, and July 6, 2005. (Ex. C to Cinque Decl., Opp. to Mot. to Vacate Default Judgment ("Cinque Decl."), dkt. 5-3.) The process server also spoke with a neighbor, David Spira, who confirmed that Ms. Lefkowitz lived at that address. (Id.) On July 6, 2005, after personal service failed, the process server affixed a copy of the Summons and Complaint to the door of 1542 54th Street and also mailed a copy to that same

3

address. (Id.) Ms. Lefkowitz never answered nor moved against the Complaint.

B. Procedural Background

This Court granted Plaintiff's Motion for Default Judgment on October 21, 2005. (Dkt. 3.) On November 16, 2005, Plaintiff registered a judgment in various counties in New York State and obtained a lien on real property owned by Ms. Lefkowitz. (See Opp. to Mot. to Vacate Default Judgment, dkt. 61, at 20.)

The case lay dormant until August 23, 2010 when Ms. Lefkowitz moved, pro se, to vacate the default judgment, claiming she did not live at 1542 54th Street and had been living instead at 1745 56th Street since 2002. (Notice of Mot. to Dismiss, dkt. 4.) Ms. Lefkowitz claimed she never retained Mr. Gardner. (She also referred to enclosed tax returns, though she attached nothing to her petition.) (Id.) On February 15, 2011, Magistrate Judge Francis IV issued a Report and Recommendation recommending that Defendant's Motion to Vacate be denied. (R. & R.)

This Court adopted Magistrate Judge Francis's Report and Recommendation on March 16, 2015. (Dkt. 32.) By then, Ms. Lefkowitz had retained counsel for the instant litigation, Jonathan Bachrach, who filed several Objections to the Report and Recommendation. (Dkts. 21, 22, 26, 27, 29, 30.) Several of

4

these documents were either untimely or unauthorized by the
Federal Rules of Civil Procedure, and this Court consequently
disregarded them in its March 16, 2015 Opinion.

On appeal, the Second Circuit remanded the case back to
this Court on March 21, 2016, noting "[a]t the objections stage,
Lefkowitz's lawyer attempted to introduce new evidence and
arguments, which the district court declined to accept. Given
Lefkowitz's pro se status before the magistrate judge, and
considering the arguments she made while proceeding pro se, the
district court exceeded the permissible bounds of its discretion
in not considering the newly submitted evidence and arguments,
even though the materials were not presented to the magistrate
judge in the first instance." (Dkt. 38.) The Circuit instructed
this Court "to first consider the issue of whether service was
properly made. If it concludes the complaint was properly
served, the district court must determine whether Lefkowitz's
motion to vacate was made within a reasonable time as required
by Rules 60(b)(6) and 60(c). If it was, then the court must
consider the McNulty factors for evaluating whether to vacate a
default judgment: "(1) whether the default was willful, (2)
whether the defendant demonstrates the existence of a
meritorious defense, and (3) whether, and to what extent,
vacating the default will cause the nondefaulting party

prejudice." (Id. (internal citation omitted).)[1] Finally, the Circuit warned Mr. Bachrach that his briefs barely comported with the quality requirements of Federal Rule of Appellate Procedure 28(a)(A). He was warned that future briefing of that quality may result in discipline. (Id.)[2]

Before the Court is Defendant's renewed Motion to Vacate Default Judgment pursuant to Rule 60 and accompanying documents of September 30, 2016. (Dkt. 57.) The Court has read and considered all arguments and submissions filed by Ms. Lefkowitz, Mr. Gardner, and Plaintiff's counsel. This includes all documents filed from 2005-2017, including previously disregarded documents filed as supplemental and second supplemental objections to the Magistrate's Report & Recommendations.[3]

---

[1] Subsequent to his first appeal, Defense Counsel also filed an interlocutory appeal for a writ of mandamus claiming that March 21, 2016 Circuit Order vacated the Default Judgment itself, not the Rule 60(b) Motion to Vacate the Default Judgment. The Circuit rejected this contention on September 1, 2016 as "unreasonable interpretation of a prior summary order." (Dkt. 50.)

[2] The Circuit's September 1, 2016 Order also noted that "Bachrach is hereby notified that the future filing of duplicative, vexatious, clearly meritless, or otherwise deficient papers in this Court will likely result in his referral to this Court's Grievance Panel for consideration of whether disciplinary or other corrective measures should be imposed." (Id.)

[3] On December 21, 2016, the Court ordered the Clerk of Court to strike docket entries 54-57 because they were duplicative of earlier entries by Mr. Bachrach. In response to Mr. Bachrach's letter of the same day informing the Court that he had technical difficulties while making his filings and thus filed documents numerous times, the Court reiterates, as it did in its December

Additionally before the Court is Defendant's Motion to Impose
Rule 11 Sanctions on Plaintiff Piers Gardner of January 12,
2017. (Dkts. 69, 71).

## II.  DEFAULT JUDGMENT VACATUR

In accordance with the Circuit's instructions, this Court
will first examine whether service was properly effected on Ms.
Lefkowitz. Next, the Court will consider whether Ms. Lefkowitz's
Motion to Vacate was made within a reasonable time under Rule
60. Finally, the Court will consider the McNulty factors for
evaluating whether or not to vacate a default judgment.

As explained infra, the Court finds that nail and mail
service on Ms. Lefkowitz was proper, that Ms. Lefkowitz brought
her Motion to Vacate within a reasonable time, but that an
evaluation of the McNulty default judgment factors demonstrate
that vacatur of default judgment is unwarranted.

### A. Proper Service

#### 1. Legal Standard

When a defendant challenges service of process, the
plaintiff bears the burden of establishing that service was
properly effected. See Kernan v. Kurz-Hastings, Inc., 175 F.3d

---

21, 2016 Order, that the Court only struck duplicative entries.
To alleviate all doubt, however, the Court notes that it has
read and considered all of Mr. Bachrach's submissions.

236, 240 (2d Cir. 1999); Vazquez v. Parks, No. 02CIV1735(LAK)(HBP), 2003 WL 1442087, at *6 (S.D.N.Y. Feb. 4, 2003), aff'd, 101 F. App'x 365 (2d Cir. 2004). A process server's Affidavit creates a presumption of effective service. Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). That presumption can be rebutted by a defendant's sworn denial of receipt of service. Id.

According to Rule 4(e) of the Federal Rules of Civil Procedure, an individual may be served, among other methods, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). In New York, service may be accomplished by serving the individual personally, by making substitute service on a person of suitable age and discretion, or by serving an agent of the individual. N.Y. C.P.L.R. § 308(1), (2), (3) (McKinney 2017). "[W]here service under paragraphs one and two cannot be made with due diligence, [service may be accomplished] by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business." Id. at § 308(4)

(emphasis added). This method is commonly referred to as "nail and mail service."

2. Analysis

The origins of the phrase "dwelling house or usual place of abode" to describe where service can be made date back to times of Equity. Yet, despite "the length of time the language . . . has been a part of federal practice, the decisions do not make clear precisely what it means." Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991) (citing 4A C. Wright & A. Miller, Federal Practice and Procedure § 1096, at 73 (2d ed. 1987)). Today, Courts look to whether there exist "sufficient indicia of permanence" at a given location to make Plaintiff's service there reasonably calculated to provide Defendant with actual notice of the action. Jaffe & Asher v. Van Brunt, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (citing Nat'l Dev., 930 F.2d at 257).

Plaintiff provides a number of indicia that show that Surie Lefkowitz resided at 1542 54th Street as her actual dwelling or usual place of abode.

An affidavit of service is prima facie proof of effective service. Gore v. RBA Group, Inc., No. 03 Civ. 9442(RJS), 2009 WL 884565, at *4 (S.D.N.Y. March 27, 2009). In an affidavit, Abraham Franco, the process server, swore that he "made prior

diligent efforts to effect personal service upon the said Defendant" three times in 2005. (Ex. C to Cinque Decl. at 1.) Franco also swore that he spoke with David Spira, a neighbor at 1539 54th Street, who stated that Defendant lived there. A neighbor's statement that a Defendant lived at a given address is an indication of permanence. See Allianz Ins. Co. v. Otero, 353 F.Supp.2d 415, 420 (S.D.N.Y. 2004) (finding due diligence requirement satisfied and nail and mail service appropriate where neighbor confirmed to process server that defendants lived at purported address).

Prior to attempting service, the process serving company also confirmed with the United States Postal Service that Lefkowitz lived at the 54th Street address. (Golub Decl. at 1.) Likewise, Mr. Gardner claims that this is the address Lefkowitz instructed him to send bills to, (Gardner Decl. ¶ 12), which is supported by the copies of invoices Plaintiff provided from 2002. (See, e.g., dkt. 66-5; see also Overseas Private Inv. Corp. v. Furman, No. 10 Civ. 7096(RJS), 2012 WL 967458, at *6 (S.D.N.Y. Mar. 14, 2012) (finding nail and mail service proper with address that Defendant gave as billing address for guarantee loan because "his representation in the Guaranty constitutes prima facie evidence that this address was his actual place of business for the purposes of this action").)

Furthermore, Plaintiff demonstrates that Defendant and her husband have a one-third ownership interest in the property (and owned the property at the time of service). (See Ex. D to Cinque Decl. (enclosing deed identifying Judah and Surie Lefkowitz as owners).) Plaintiff also encloses a screenshot of address search results for "Surie Lefkowitz" from AmericanTowns.com, with a heading "White Pages, Yellow Pages and Public Records." The screenshot includes the 54th street address as one of Ms. Lefkowitz's registered addresses along with a telephone number. (Ex. A to Pl.'s Response to Def.'s Obj. to the R. & R. of Mag. Judge Francis.) Plaintiff asserts that Gardner's attorneys confirmed that there was still a telephone listing in Lefkowiz's name at that address prior to service. (Pl.'s Memo of Law at 8.) While this unauthenticated website would normally not be the most persuasive evidence on its own, it, coupled with the other occurrences discussed above, give rise to the strong inference that Surie Lefkowitz resided at 1542 54th Street, her "actual" dwelling or "usual place of abode." N.Y. C.P.L.R. § 308(4) (McKinneys 2017). Thus, nail and mail service at 1542 54th street was proper because there exist "sufficient indicia of permanence" at that location to make Plaintiff's service there reasonably calculated to provide Defendant with actual notice of the action. Cf. Jaffe & Asher, 158 F.R.D. at 280 (finding sufficient indicia of permanence where defendant received mail

11

at address, had phone line at address, and represented to
Plaintiff that it was transacting business at that address).

### 3. Counterarguments

From what the Court can discern from Defense counsel's
long, often incoherent briefs, the thrust of Defense counsel's
argument is that the Defendant never lived at 1542 54th street
and lived instead at 1745 56th street. (Def.'s Memo of Law at
12.) Defense counsel provides several tax forms and documents
listing the 56th street address as "proof" Defendant lived at
1745 56th Street. (Ex. B, Aff. of Surie Lefkowitz, dkt. 19.).

However, a "person can have two or more 'dwelling houses or
usual places of abode,' provided each contains sufficient
indicia of permanence." Nat'l Dev. Co., 930 F.2d at 257.
Otherwise, a "strictly literal interpretation of the rule may
thwart the purpose of Fed.R.Civ.P. 4(e)—to insure that service
is reasonably calculated to provide a defendant with actual
notice of the action." Jaffe & Asher, 158 F.R.D. at 280. Indeed,
"the 'permanence' a person enjoys at one residence is not
lessened by the fact that he or she enjoys permanence
elsewhere." See Polygram Merch., Inc. v. N.Y. Wholesale Co., No.
97 CIV 6489(HB), 2000 WL 23287, at *2 (S.D.N.Y. Jan. 13, 2000),
aff'd sub nom. Polygram Merch., Inc. v. Wu-Wear, Inc., 242 F.3d
367 (2d Cir. 2000); 131 Main St. Assocs. v. Manko, 897 F.Supp.

1507, 1524 (S.D.N.Y. 1995).[4] That is why, in a similar dispute over unpaid legal fees and challenge of effective service, then-District Judge Sotomayor rejected Defendant's argument that he could only have one place of abode because his tax returns listed an alternative address. See Jaffe & Asher, 158 F.R.D. at 279. Similarly, the tax returns provided by Ms. Lefkowitz showing an alternate address do not discredit the finding that she still "enjoyed permanence elsewhere," i.e. – at 1542 54th street.

Ms. Lefkowitz does attest that "[p]rior to and in 2005, we rented out our premises 1542 54th Street, Brooklyn, New York to tenants, as proven by the attached IRS Form 1040 - Schedule E - Income from Real Estate Rental document proves." (Decl. of Surie Lefkowitz, dkt. 54-2 ¶ 42.)[5] However, Defendant Lefkowitz has not provided to the Court any signed leases or affidavits of former tenants to support her contention that 1542 54th Street was being leased out at the exact time service was effectuated. In Polygram Merchandising, a Defendant claimed she was renting out the property where plaintiff served her by nail and mail service. 2000 WL 23287 at *2. The Court admonished defendant for

---

[4] The Court also notes that service may be effective "even where it is undisputed that defendant was not staying at the address where service was attempted, at the time service was made." Polygram Merchandising, 2000 WL 23287 at *2.

[5] Schedule E, Ex. F to Lefkowitz Decl., dkt 19 at 53, only refers generally to rental income.

providing leases to the Court that "were unsigned, incomplete
documents . . . [that] of course were unaccompanied by any
affidavit from the alleged tenants." Id. at *3. "Such evidence
fails to provide any assurance that these properties were in
fact being leased . . . ." Id. The Court also noted that the
Defendant presumably returned to the rented address at some
point to maintain it, because "[a]t no time has [defendant] ever
asserted that she left that residence permanently and without
the intent to return." Id. In a similar vein, Ms. Lefkowitz has
not provided any signed leases or affidavits of former tenants,
nor has she ever asserted that she has left the 54th street
address permanently. Thus, she has not adequately rebutted the
indicia of permanence Plaintiff established.

After being warned by the Circuit for filing briefs
"virtually devoid of citation to legal authority," Gardner v.
Lefkowitz, 15-1139 No. 121, (2d Cir. Mar. 21, 2016), Defense
counsel now cites to only two cases in his current briefs with
regard to effective service, neither of which have any relevance
here. (See Def.'s Memo of Law at 13-14.) In Serrano v. N.Y.
State Dep't of Envtl. Conservation, service was found to be
improper because a typo resulted in process servers attempting
service at an incorrect address altogether, among other mishaps
by the process serving company. See No. 8:12-CV-1592 (MAD/CFH),
2015 WL 757268, at *7 (N.D.N.Y. Feb. 23, 2015). We have no

14

indication the process servicing company in the instant litigation relied on a typo or else engaged in other misdeeds.

Defense counsel also refers to the outlier case Sterling v. Envtl. Control Bd. of City of N.Y., 793 F.2d 52 (2d Cir. 1986), where the Second Circuit found part of a New York Sanitation Code unconstitutional because it allowed for nail and mail service of summonses for sanitation violations to absentee landlords at the place of the violation, rather than their registered business address. Id. at 58. Notwithstanding the fact that the Second Circuit noted the "widespread abuse of the nail and mail process" within the sanitation violation context, the constitutionality of N.Y. C.P.L.R. § 308(4) and nail and mail service is not being challenged here. Sterling's constitutional analysis is therefore not applicable.

Defendant has not alleged "specific facts" sufficient to rebut the statements in the process server's affidavits such that an evidentiary hearing would be required. Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57–58 (2d Cir. 2002); see also Simonds v. Grobman, 716 N.Y.S.2d 692, 693 (2d Dep't 2000) (holding no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits). In her Affidavit, Defendant does not dispute that she received mail at

15

the 54th street address, or why or if she gave out that address
to Mr. Gardner over the course of his representation.[6] She does
not dispute that the process server actually contacted the Post
Office who confirmed that address for her, nor does she dispute
that the server spoke with a neighbor of hers or explain why the
neighbor stated that she lived at that address. Rather, she
merely states in a conclusory fashion that "[p]rior to and in
2005, I did not reside at at [sic] 1542 54th Street, Brooklyn,
New York." (Lefkowitz. Decl. ¶ 13.) Because Ms. Lefkowitz has
not alleged specific facts to rebut the statements in the
Plaintiff's Affidavits, an evidentiary hearing is not required.[7]

---

[6] All that Ms. Lefkowitz states is that she never received any
invoices from Mr. Gardner and has "no specific recollection of
seeing any such invoice prior to this proceeding, but even if I
have, I would have simply thrown it away . . . ." (Lefkowitz
Decl. ¶ 9.) Yet the Plaintiff's Declarations do not purport to
establish that Ms. Lefkowitz necessarily received bills at that
address; they merely seek to establish that she represented to
Mr. Gardner that she was conducting business at that address.
Defendant has not adduced specific facts that rebut this
representation. See Jaffe & Asher, 158 F.R.D. at 280 ("Equally
as important, Van Brunt represented to J & A and others that 4
William Street was his residence. Not only did Van Brunt request
that J & A bill him at the 4 William Street address, he also
sent the firm letters prepared on stationery listing that
address or the number of the phone he maintains there.").

[7] Defense counsel also attempts to renew arguments on the
validity of the Golub Affidavit, Plaintiff's most recent process
server affidavit. Defense counsel argues this Affidavit was not
filled out by the process server himself (though the original
Franco Affidavit was filled out by the process server himself).
Yet as explained in a previous Opinion of this Court, those
differences are minimal at best. See, e.g., Cablevision Sys.

See <u>Old Republic Ins. Co.</u>, 301 F.3d at 58 (holding defendant's affidavit did not refute specific facts in process server's affidavit and also did not dispute whether it was reasonable for server to rely on directions of company security identifying defendant as corporate officer at service address).

B. Timeliness

Federal Rule of Civil Procedure 60(c)(1) mandates that a Motion for Reconsideration based on voidness must be brought "within reasonable time." Fed. R. Civ. P. 60(c)(1). A "judgment obtained by way of defective service is void for lack of personal jurisdiction . . . ." <u>Orix Fin. Servs. v. Phipps</u>, No. 91 Civ. 2523, 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009). As for what constitutes a "reasonable time," the Second Circuit has noted that "courts have been exceedingly lenient in defining the term 'reasonable time,' with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be brought at any time.'" <u>Cent. Vt. Pub. Serv. Corp. v. Herbert</u>, 341 F.3d 186, 189 (2d Cir. 2003) (internal citation omitted).[8]

---

<u>N.Y. City Corp. v. Okolo</u>, 197 F. App'x 61, 62 (2d Cir. 2006) (rejecting defendant's claims that minor discrepancies in server's affidavit supported a finding that service was defective, and rejecting claims for an evidentiary hearing).
[8] The Court notes that Defense counsel does not make this argument in its brief and merely refers incoherently to the due diligence requirement of the N.Y. C.P.L.R. and also 28 U.S.C.

Therefore, even though Ms. Lefkowitz waited five years to bring a challenge to the default judgment, her Rule 60(b) Motion was still brought within a reasonable time for the purposes of Rule 60.[9]

## C. McNulty Factors

Finally, the Circuit instructed this Court to consider the McNulty factors. "In deciding a motion to vacate a default judgment, the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).

### 1. Default Willful

The Second Circuit has interpreted "'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." McNulty, 137 F.3d at 738 (citing Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.

---

§1655, which deals with real property liens and adverse possession claims.
[9] Because the Court finds prima facie that five years falls within the meaning of a "reasonable time" of the Federal Rules, the Court need not address Defendant's arguments of whether delivery to Tepfer and Tepfer constituted constructive notice of the default Judgment.

1996) (holding default due to filing mistake by defendant's in-house counsel's clerk was not willful). A default may be found "to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." See McNulty, 137 F.3d at 738-39 (citing United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976) (finding default was willful where attorney failed, for unexplained reasons, to respond to a summary judgment motion)).

We have no indication that Ms. Lefkowitz willfully defaulted by questionable conduct. Ms. Lefkowitz asserts she had no knowledge of the default judgment against her. (Lefkowitz Decl. ¶ 11.) Thus, the Court cannot find that default was willful on the part of Defendant. Cf. Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 244 (2d Cir. 1994) (finding default willful where defendants "purposely evaded service for months").

2. Meritorious defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense . . . ." McNulty, 137 F.3d at 732 (internal citations and quotations omitted).

A defaulting Defendant "could not present such a defense by mere conclusory statements. . . . Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." Sony Corp. v. Elm State Electronics, Inc., 800 F.2d 317, 320-21 (2d Cir. 1986) (internal citation omitted).

Defendant has failed to do so, providing only sworn (and unsworn) conclusory denials. See id. at 321 ("The affidavits that defendants filed were no more than sworn conclusory denials and were properly held to be insufficient.").

Without supplying any relevant or credible evidence, Defense counsel alleges that Ms. Lefkowitz never agreed to pay for her brother's legal fees. Defense counsel then details a conspiracy wherein he claims that Mr. Gardner conspired with Sholam Weiss secretly to transfer to Mr. Gardner funds from hidden accounts to pay for Mr. Weiss's defense. (Pl.'s Memo of Law at 5-6.) Defense counsel claims that "[b]y hiding these secret transfers, fraudulent conveyances and thefts – under the guise that Surie Lefkowitz – not Weiss – paid him the money – Gardner hoped to extort Weiss to arrange further wire transfers to him, ala Tepfer & Tepfer. Hence, Gardner created the

fraudulent story that Defendant Mrs. Lefkowitz promised to pay Weiss legal fees." (Id. at 6).

In support of this, the evidence Defense counsel cites is a 2001 invoice from Monckton Chambers to a Samuel I Burstyn, whom Defense counsel claims was involved in the secret transfer scheme. (Ex. 4 to Pl.'s Mot. to Vacate Judgment). Yet the invoice is exactly that—an invoice. It does nothing to support Defense counsel's theory.

Nor do any of Defense counsel's other arguments have any merit. Defense counsel repeatedly notes that Mr. Gardner has not provided the Court with a written retainer agreement between Ms. Lefkowitz and him. (See, e.g., Pl.'s Memo of Law at 4.) Yet the production of a retainer agreement was not required to file for default judgment in 2005, nor is it required now when the burden rests on Defendant, not Plaintiff, to present evidence of a meritorious defense.  Defense counsel attempts to point to New York General Obligations Law § 5-701, (Id. at 10), which states that every agreement that "is a special promise to answer for the debt, default or miscarriage of another person" is void unless it is reduced to writing. N.Y. Gen. Oblig. Law § 5-701 (McKinney 2002). If it is Defense counsel's contention that Ms. Lefkowitz undertook the "debt" of her brother's, then Defense counsel should provide evidence to that effect. To the contrary,

all that is before the Court are Defendant's conclusory denials
and Plaintiff's invoices and letters from Mr. Gardner to Ms.
Lefkowitz, which in reality evince an agreement between those
two individuals. In fact, Ms. Lefkowitz admits that she met with
Mr. Gardner in May 2002. (Decl. of Surie Lefkowitz in Support of
Mot. to Vacate Default Judgment, dkt. 68, ¶ 7.) Promising to pay
for the legal fees of one's brother ex ante is not the same as
assuming prior debts ex post.

Defense counsel also argues that Mr. Gardner fraudulently
billed Ms. Lefkowitz because several of his invoices to Ms.
Lefkowitz for Mr. Weiss's extradition defense included work
performed after the actual extradition itself, which occurred on
June 9, 2002.  (Id. at 6.) Yet there are a number of plausible
explanations for the date of the invoices. First of all, it
makes sense that invoices are memorialized after actual work has
been completed. Second, Mr. Weiss's appeals before the UN Human
Rights Committee were ongoing past the date of his actual
extradition. (See Ex. 5 to Def's. Memo of Law (referring to
UNHCR appeal papers being due on December 23, 2002).)  And as
for Defense counsel's arguments that Gardner did no work on the
UNHCR proceedings simply because another attorney's name was
listed as the attorney of record on the final UNCHR Opinion,
they are unfounded. Gardner could have consulted and worked on
the UNHCR proceedings in a number of ways while not being listed

22

on one document as the attorney of record. In fact, the December 17, 2002 letter from Monckton Chambers to Ms. Lefkowitz specifically refers to coordination with the attorney of record listed, Edward Fitzgerald. (December 2002 Demand Letter.)

Defense counsel's remaining arguments are equally baseless. Defense counsel cannot now attempt to challenge venue in Motion to Vacate Default Judgment. See Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default." (citing Commercial Cas. Ins. Co. v. Consol. Stone Co., 278 U.S. 177, 179–80 (1929)); see also 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2695 (3d ed. 1998) ("[P]roper venue is not essential to a valid judgment; therefore a venue defect will be waived by failing to appear and suffering a default judgment.").

Nor can Defense counsel argue that this Court lacks subject matter jurisdiction. (Pl.'s Memo of Law at 8.) Plaintiff's Complaint sought judgment against Defendant for $139,875.00[10]

---

[10] It is unclear to the Court how Defense counsel arrived at a $31,495.00 figure that only takes into account legal work done before Mr. Weiss was extradited. See supra (rejecting Defense counsel's arguments that Gardner's invoices were fraudulent because they included work performed after Mr. Weiss's actual extradition).

worth of unpaid legal fees, (Compl. at 4), which is in excess of the $75,000 diversity jurisdiction threshold.[11]

Accordingly, Defense counsel has failed to "present evidence of facts that, if proven at trial, would constitute a complete defense." McNulty, 137 F.3d at 732 (internal citations and quotations omitted).

3. Non-defaulting party prejudice

Because this Court found supra that Defendant failed to demonstrate a meritorious defense, it need not determine whether vacating the default would cause Plaintiff prejudice. See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 174 (2d Cir. 2004) ("We need not evaluate whether the vacatur of the default judgment would subject State Street Bank to prejudice because we have concluded that the defendants failed to establish a meritorious defense; the absence of such a defense is sufficient to support the district court's denial of the defendants' first Rule 60(b) motion." (citing Commercial

---

[11] It is also unclear to the Court how Defense counsel can argue that Mr. Gardner does not have "standing" to sue Ms. Lefkowitz because his invoices to Ms. Lefkowitz were sent on Monckton Chambers letterhead and from him individually. (See Pl.'s Objs. To R. & R. of Magistrate Judge Francis at 2.) It is standard practice to send invoices with one's employer or chambers on the letterhead. In addition, the invoices included Mr. Gardner's name and indicated it was for work performed by him.

Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 244 (2d Cir. 1994)).

Nevertheless, the Court finds that Mr. Gardner would be prejudiced even if the Court considers this final McNulty factor. First, the expense of litigating this matter for over ten years may be enough to establish prejudice. See In re Chalasani, 92 F.3d 1300, 1307 (2d Cir. 1996) ("Weighed also in the decision not to reopen was the prejudice State Bank would have suffered if the case were relitigated. The expense incurred in obtaining a default judgment may support a finding that reopening would prejudice a creditor.").

More importantly, Mr. Gardner docketed a judgment against property owned by Ms. Lefkowitz in Kings County Supreme Court on November 16, 2005 (and sought a renewal judgment on November 10, 2015). (Pl.'s Memo of Law at 20.) Not only is Mr. Gardner currently litigating a state court action with Ms. Lefkowitz over these judgments, but Mr. Gardner's eleven-year lien priority would be compromised if the default judgment in the instant action is vacated. (Id.) Thus, Plaintiff has demonstrated that vacating the default judgment would cause him undue prejudice.[12]

---

[12] Defense Counsel makes no coherent argument as how vacating default would not cause Mr. Gardner prejudice. Rather, Defense Counsel merely reiterates his previous unfounded allegations

### III. <u>RULE 11 SANCTIONS</u>

Defendant has also moved to impose Rule 11 Sanctions on Plaintiff Piers Gardner and to be awarded legal fees. (Def.'s Notice of Mot. to Impose Rule 11 Sanctions on Pl., dkt. 69.) In his Motion, Defense counsel attempts to re-litigate and re-argue the various contentions he made in his Motion to Vacate Default Judgment: that venue was improper in the SDNY, that diversity jurisdiction does not exist, that Mr. Gardner should have never charged Ms. Lefkowitz for services rendered after Mr. Weiss's date of extradition, that Gardner somehow did not represent Mr. Weiss before the UNHCR because he was not listed as the attorney of record, and so on. (<u>Id.</u>) Defense counsel has not made out an adequate case for Rule 11 Sanctions and an award of attorney's fees. <u>See</u> <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986) ("As a final matter we note that in imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer. As we stated in <u>Eastway</u>, rule 11 is violated only when it is 'patently clear that a claim has

---

that Mr. Gardner overbilled Ms. Lefkowitz for his legal work, and then proceeds to state that Mr. Gardner should have sued Ms. Lefkowitz in England, or else Mr. Gardner should fly to the United States and submit himself to a deposition because he has a judgment against a United States citizen and the "round trip air fare (<u>sic</u>) and hotel is negligible." (Pl.'s Memo of Law at 23.) The Court is unaware of any legal authority supporting Defense Counsel's propositions.

absolutely no chance of success.'" (citing Eastway Const. Corp.
v. City of N.Y., 762 F.2d 243, 254 (2d Cir. 1985)).


IV.   CONCLUSION

For the reasons stated herein, Defendant's Motion to Vacate
Default Judgment and for Rule 11 Sanctions are DENIED. The Clerk
of Court is directed to close the docket in this case.

SO ORDERED.

Dated:     March 30, 2017
           New York, New York


_____
        Deborah A. Batts
United States District Judge